**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 22 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

WILLIAM K. KINROSS,

       Plaintiff-Appellee,

v.

UTAH RAILWAY COMPANY, a
Utah Corporation,

       Defendant-Appellant.

No. 02-4192

Appeal from the United States District Court
for the District of Utah
(D.C. No. 01-CV-10-BSJ)

David S. Kunz (Brad C. Smith with him on the brief) of Stevenson & Smith, P.C.,
Ogden, Utah, for Plaintiff-Appellee.

Matthew N. Evans (Richard D. Flint with him on the briefs) of Holme, Roberts &
Owen LLP, Salt Lake City, Utah, for Defendant-Appellant.

Before **EBEL,** Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

**BRORBY**, Senior Circuit Judge.

Utah Railway Company appeals a district court order granting summary judgment against it and in favor of its former employee, William Kinross. The district court held Mr. Kinross did not receive due process in the course of an Arbitration Board's review of his wrongful termination claim. We exercise jurisdiction under 28 U.S.C. § 1291, reverse the district court, and remand the case for further proceedings.

**Background**

Mr. Kinross worked for Utah Railway for twenty-one years and was a member of the United Transportation Union. Sometime in 1998, he inquired about purchasing railroad ties from Utah Railway. A Utah Railway representative told him to talk to a section foreman. The section foreman told Mr. Kinross he could "have" five or six ties, and when Mr. Kinross asked about the price, the foreman asked for some cold Pepsi. Mr. Kinross delivered a six-pack of Pepsi and took the ties to his home.

In April 1998, a large number of railroad ties were reported missing from the railyard. Utah Railway officials went to the homes of employees and discovered Utah Railway ties in Mr. Kinross' yard. Several days later, the section

foreman confessed to taking ties himself[1] and resigned immediately.

As required by a collective bargaining agreement, Utah Railway conducted an investigation and held a hearing relating to Mr. Kinross' conduct. Mr. Kinross explained he inquired about and received four to six ties in 1998, and admitted he did not have a "notice of sale" or "certificate of purchase" from Utah Railway. Other Utah Railway employees testified to seeing Utah Railway ties at Mr. Kinross' house. They identified the ties as Utah Railway's based on backhoe markings unique to the carrier. At the conclusion of the investigation and hearing, Utah Railway terminated Mr. Kinross. With Union assistance, Mr. Kinross unsuccessfully appealed his termination to a Utah Railway Executive Vice President.

Mr. Kinross thereafter sought a Special Board of Adjustment review of whether just cause supported his termination pursuant to § 153 of the Railway Labor Act, 45 U.S.C. §§ 151 - 163, 181 - 188. As the Act provides, the Board included one neutral member, one Union member, and one Utah Railway member. *Id.*, § 153(f). The record before the Board included the termination hearing

---

[1] It is unclear from witness testimony when the foreman took ties.

transcript and written submissions from Mr. Kinross and Utah Railway. One of Utah Railway's submissions suggested Mr. Kinross may have been involved in a larger railroad tie theft conspiracy, but noted the section foreman admitted to appropriating ties for his own use.

In a written decision, the Board determined just cause supported Mr. Kinross' termination. It first noted section foremen do not have the authority to authorize the sale of ties to employees, and an employee who wishes to purchase ties must obtain a document certifying the nature of the property sold, the amount purchased, the purchase price, and identifying the prospective location of the property. The Board then found Mr. Kinross received ties from the section foreman in exchange for a six-pack of Pepsi. Relying on testimony from Utah Railway representatives and Mr. Kinross, the Board concluded Mr. Kinross obtained ties "without authorization from anyone other than the Section Foreman." The Board's decision did not reference the Utah Railway submission, state it relied on that submission, or in any other way indicate Mr. Kinross participated in a conspiracy to obtain railroad ties. The Union Board member did not support the conclusion.

Mr. Kinross sought judicial review of the Board's determination in the

United States District Court for the District of Utah. He claimed the Board (1) failed to confine itself to matters within its jurisdiction; (2) failed to afford him due process; and (3) acted in a fraudulent and corrupt manner.

The district court denied Utah Railway's motion for summary judgment based on its determination Mr. Kinross did not receive due process. It found the Board improperly considered testimony concerning the ties reported missing in April, and Utah Railway's "ex parte" submission that falsely implied Mr. Kinross' involvement in the April events.[2] It stated such information possibly biased the neutral Board member, "and at the very least, unfairly infect[ed] the proceedings with needless confusion."

The district court subsequently granted Mr. Kinross' motion for summary judgment and vacated the Board's award. It ordered further arbitration

---

[2] In so finding, the district court determined the Board must have impermissibly considered both the testimony and the submission about an April theft because the Board found Mr. Kinross exchanged the Pepsi for railroad ties in April, and not in February as Mr. Kinross' transcript testimony seems to indicate. However, we note several witnesses referred to the April theft because it merely instigated the investigation and discovery of railroad ties on Mr. Kinross' property, which he admitted he took without cash payment or the necessary receipt or certificate. This may explain the Board's finding that the ties, which Mr. Kinross admittedly took at some point in 1998, occurred in April.

proceedings under the Railway Labor Act before an Adjustment Board composed of different members. It suggested the parties submit a stipulated statement of facts, excluding any reference to the ties reported missing in April. If the parties could not agree on stipulated facts, the court ordered the Board to conduct a *de novo* hearing and exclude any reference to the April missing ties incidents.

Utah Railway appeals this order, raising three arguments. First, it believes the district court erred in holding due process is a fourth independent ground for reviewing a decision of the Adjustment Board pursuant to the Railway Labor Act, and thereby implies the district court exceeded its subject matter jurisdiction. Second, even if due process is a proper ground for review, it argues the district court improperly exceeded its jurisdiction in making independent factual findings and evidentiary rulings and erred in holding Mr. Kinross did not receive due process. Finally, it claims the district court improperly exceeded its jurisdiction by ordering an entirely new hearing before a newly constituted Board, and in directing the specific manner in which the new proceeding is to be conducted.

**Standard of Review**

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Oklahoma*,

165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 328 U.S. 815 (1999). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We likewise review the district court's subject matter jurisdiction de novo. *See Robinson v. Union Pac. R.R.*, 245 F.3d 1188, 1191 (10th Cir. 2001).

**Discussion**

We must first address whether the district court exceeded its subject matter jurisdiction in reviewing the Board's decision for a due process violation. Utah Railway claims the district court erroneously held a due process violation is grounds for judicial review of an Arbitration Board determination. It believes federal courts may only review claims that fall within the three categories stated in the Railway Labor Act, and no independent due process grounds for review exist. It believes due process considerations are included within the structure of the Railway Labor Act itself.

"Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir.1999). The Railway Labor Act sets out three grounds

-7-

for judicial review of an Adjustment Board's decision: (1) failure of the Board to comply with the Railway Labor Act's requirements; (2) failure of the Board to conform or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption of a Board member. 45 U.S.C. § 153(q).

In *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89 (1978), the Supreme Court considered whether federal courts could consider other claims of error arising from Adjustment Board proceedings. In *Sheehan*, this circuit had ruled an Adjustment Board's failure to consider a plaintiff's equitable tolling argument deprived him "'of an opportunity to be heard in violation of his right to due process.'" *Id.* at 91-92 (quoting *Union Pac. R.R. Co. v. Sheehan,* 576 F.2d 854, 857 (10th Cir. 1978)). The Supreme Court reversed our decision, stating:

> If the Court of Appeals' remand was based on its view that the Adjustment Board had failed to consider respondent's equitable tolling argument, the court was simply mistaken. The record shows that respondent tendered the tolling claim to the Adjustment Board, which considered it and explicitly rejected it.... If, on the other hand, the Court of Appeals intended to reverse the Adjustment Board's rejection of respondent's equitable tolling argument, the court exceeded the scope of its jurisdiction to review decisions of the Adjustment Board.

*Id.* at 92-93. After listing the three grounds for judicial review under the Railway Labor Act, The Court held "[o]nly upon one or more of these bases may a court set aside an order of the Adjustment Board." *Id.* at 93. It emphasized "[t]he

-8-

dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act." *Id.* The Court made it clear an Arbitration Board decision "may be set aside *only* for the three reasons specified [in the Railway Labor Act]. We have time and again emphasized that this statutory language means just what it says." *Id.* (emphasis added).

We note a split exists among the circuits on whether *Sheehan* precludes federal review of Arbitration Board decisions on due process grounds other than the three permitted by the statute. The Second, Fifth, Seventh, Eighth and Ninth Circuits have held federal courts may review due process claims arising from Adjustment Board decisions. *See Shafii v. PLC British Airways*, 22 F.3d 59, 64 (2d Cir. 1994) (holding a Board decision is "reviewable upon a claim that a participant was denied due process by the Board"); *Atchison, Topeka and Santa Fe Ry. Co. v. United Transp. Union*, 175 F.3d 355, 357 (5th Cir. 1999) (stating "[t]his Court has recognized a fourth basis for setting aside an award, in cases where the award failed to meet the requirements of due process"); *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (explaining "we have recognized a fourth category of objections that supply jurisdiction over the award – an allegation that a party was denied due process"); *Goff v. Dakota,*

*Minnesota & E. R.R. Corp.,* 276 F.3d 992, 997 (8th Cir. 2002) (concluding "[i]n addition to the statutorily created parameters of review, courts have recognized that railroad arbitration decisions are reviewable for possible due process violations"); *English v. Burlington N. R.R. Co.*, 18 F.3d 741, 744 (9th Cir. 1994) (stating "a constitutional challenge is a permissible fourth ground by which a federal court can review an adjustment board decision").

On the other hand, the Third, Sixth, and Eleventh Circuits have held *Sheehan* precludes federal courts from reviewing due process claims under the Railway Labor Act. *See United Steelworkers of Am. Local 1913 v. Union R.R. Co.*, 648 F.2d 905, 911-12 (3d Cir. 1981) (discussing *Sheehan* and then declining to consider a due process claim not falling into the Railway Labor Act's three categories of review); *Henry v. Delta Air Lines*, 759 F.2d 870, 873 (11th Cir. 1985) (stating "*Sheehan* precludes judicially created due process challenges to System Board awards"); *Jones v. Seaboard Sys. R.R.*, 783 F.2d 639, 642 n.2 (6th Cir. 1986) (explaining "[i]n *Sheehan*, the Supreme Court reversed the Tenth Circuit's holding that denial of due process was an additional basis for judicial review").

Like these three circuits, we read *Sheehan* to preclude judicial review of

due process claims beyond those specifically articulated in the Railway Labor Act. The *Sheehan* Court repeatedly stated the three grounds set out in the statute are the *only* grounds for judicial review. *See Sheehan*, 439 U.S. at 92-93. As the Court observed, "Congress considered it essential to keep ... so-called 'minor' disputes within the Adjustment Board and out of the courts." *Id.* at 94. Consistent with this purpose, Congress specifically limited due process review of Adjustment Board proceedings to the three specific claims articulated in the statute. *Id.* at 92-93.[3] Not only would review of Adjustment Board decisions for

---

[3] We believe the Railway Labor Act itself provides for process sufficient to meet constitutional requirements. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To satisfy due process requirements, a tribunal must not act outside its jurisdiction, and it must be impartial, *see Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Most importantly, a tribunal must ensure an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks and citation omitted).

Congress provided sufficient process to meet these due process requirements when it set forth the three grounds for judicial review in 45 U.S.C. § 153(q). First, Congress allowed for review of the Board's failure to comply with the requirements of the Railway Labor Act, including procedural requirements ensuring claimants an opportunity to present evidence and argue their case. Second, it allowed for review of the Board's failure to confine itself to matters within its jurisdiction. Finally, it allowed for review for fraud or corruption on the part of the Board, which ensures an impartial tribunal. In short, the Railway Labor Act itself provides for sufficient procedural due process within its own boundaries.

In the instant case, the district court improperly operated outside the bounds of these three grounds for judicial review by evaluating the scope of the

other due process violations require an evasive reading of *Sheehan*, it also would frustrate Congress' intent to keep such disputes out of the courts. Accordingly, we reverse the district court's order granting summary judgment in Mr. Kinross' favor. Because we determine the district court lacked jurisdiction to review Mr. Kinross' due process claim, we need not (and in fact lack jurisdiction to) address Utah Railway's remaining issues on appeal related to that claim.

**Conclusion**

We **REVERSE** the district court's order granting Mr. Kinross' motion for summary judgment. Because the district court did not reach Mr. Kinross' remaining two claims on whether the Board (1) exceeded its jurisdiction or (2) acted in a fraudulent and corrupt manner, we **REMAND** the case to the district court for a determination on these issues.

---

evidence presented, and thus exceeded its subject matter jurisdiction.