**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 14 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROLLY J. SORRENTINO; JOANN
M. SORRENTINO, Husband & Wife,

     Plaintiffs-Appellees,

v.

INTERNAL REVENUE SERVICE;
UNITED STATES OF AMERICA,

     Defendants-Appellants.

---

STEVEN G. SKLAVER,

     Amicus Curiae.

Nos. 02-1114 & 02-1137

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 01-K-129)**

---

Rolly J. Sorrentino and Joann M. Sorrentino, Pro Se.

Robert W. Metzler, Attorney, Tax Division (Eileen J. O'Connor, Assistant Attorney
General and Kenneth L. Greene, Attorney, Tax Division, Department of Justice,
Washington D.C., and John W. Suthers, United States Attorney, Denver, Colorado,
with him on the brief), Department of Justice, Washington D.C., for Defendants-
Appellants.

Steven G. Sklaver of Cooley Godward LLP, Broomfield, Colorado, as Court-Appointed
Amicus Curiae.

Before **SEYMOUR**, **BALDOCK**, and **HARTZ**, Circuit Judges.

**BALDOCK**, Circuit Judge, delivering the Judgment of the Court and an Opinion.

**HARTZ**, Circuit Judge, concurring in the Judgment only and delivering an Opinion.

**SEYMOUR**, Circuit Judge, dissenting from the Judgment and delivering an Opinion.

**BALDOCK**, Circuit Judge.

Internal Revenue Code (I.R.C.) § 7422(a) authorizes a taxpayer to commence a tax refund suit against the Government once "a claim for refund or credit has been duly filed" with the Internal Revenue Service (IRS). Section 6511 of the I.R.C. limits the Government's waiver of immunity under § 7422(a) by requiring a taxpayer to file a claim for refund or credit with the IRS within a specified period of time. Thus, the taxpayer's timely filing of such claim with the IRS is a jurisdictional prerequisite to maintaining a tax refund suit against the Government. See United States v. Dalm, 494 U.S. 596, 602 (1990). In this case, we conclude the district court lacked jurisdiction over Plaintiffs-Taxpayers' refund suit based upon their failure to timely file a refund claim with the IRS.

I.

Defendant IRS granted Plaintiff-Taxpayers Rolly and Joann Sorrentino a four month extension of time, or until August 15, 1995, to file their 1994 1040 income tax

2

return. Taxpayers, apparently awaiting an "INPOL Report" from the IRS, maintain they

mailed their 1994 return to the IRS via regular United States postal mail in early March

1998, two and one-half years after its due date.[1] On their return, Taxpayers claimed a

refund of $8,551 based on excess wage withholding during the 1994 taxable year. The

IRS disallowed Taxpayers' refund claim as untimely. The IRS maintained it had no

record of receiving Taxpayers' 1994 return until October 1998.

Taxpayers, appearing *pro se,* filed this lawsuit after the IRS disallowed their

refund claim. The IRS moved for summary judgment based on Taxpayers' inability to

establish the IRS received their refund claim on or before August 15, 1998.[2] Over the

IRS's objection, the district court applied the common law mailbox rule, which provides

proof of mailing of a properly addressed communication bearing proper postage creates

a rebuttable presumption the communication was received. Accordingly, the district

court denied the IRS's motion:

> Applying the common law mailbox rule to this case, the Sorrentinos
> are entitled to a rebuttable presumption that they timely filed their refund
> claim for the 1994 tax year upon proof they properly mailed their 1994 tax

---

[1] According to the district court, an "INPOL Report" is a transcript of a taxpayer's income as reported to and recorded by the IRS during a given taxable year. Sorrentino v. United States, 199 F. Supp. 2d 1068, 1071 (D. Colo. 2002).

[2] The parties agree the applicable limitations period under I.R.C. § 6511 for Taxpayers' refund claim is three years from the fifteenth day of the fourth month following the close of the taxable year in which the withholding occurred, plus the period of any extension; or, in this case, three years from August 15, 1995. We accept this date and leave the task of unraveling § 6511's jargon to another day. See Weisbart v. United States Dept. of Treasury, 222 F.3d 93, 94-96 (2d Cir. 2000).

3

return in time for it to be delivered to the IRS before the [August] 15, 1998 deadline. Mr. Sorrentino has testified he properly mailed the 1994 return in early March, 1998, which provided more than ample time for the return to reach the IRS in the ordinary course of the mail before the [August] 15 deadline. Mr. Sorrentino's account of an early March mailing is supported by the March 1 signature date on the photocopied return the IRS acknowledges receiving and by Mr. Sorrentino's testimony that he followed up on the status of the return before the October 2, 1998 filing date asserted by the IRS.

Sorrentino v. United States, 171 F. Supp. 2d 1150, 1154 (D. Colo. 2001) (Sorrentino I).[3]

At the district court's encouragement, Taxpayers also moved for summary judgment. See id. In response, the IRS did not dispute the substance of Taxpayers' refund claim. Rather, the IRS argued, among other things, that Mr. Sorrentino's sworn statements of proper mailing in a deposition and affidavit were uncorroborated, self-serving, and insufficient to establish actual mailing in March 1998. The district court disagreed, holding "the United States failed to produce evidence rebutting the presumption [arising from the common law mailbox rule] that the Sorrentinos' return was delivered to it and thus filed on or about March 8, 1998." Sorrentino v. United States, 199 F. Supp. 2d 1068, 1078 (D. Colo. 2002) (Sorrentino II). The court entered judgment in favor of Taxpayers, awarding them a refund of $8,551 plus interest.

The IRS appeals, arguing (1) I.R.C. § 7502 supplants the common law mailbox rule, and (2) Taxpayers' self-serving statements are insufficient to establish actual mailing in March 1998. Our jurisdiction arises under 28 U.S.C. § 1291. We apply

---

[3] The district court mistakenly referred to the deadline as April 15, 1998.

the same summary judgment standard to our record examination as the district court and review its judgment de novo. See Kinross v. Utah Ry. Co., 362 F.3d 658, 660 (10th Cir. 2004). Applying this standard, we reverse and remand with instructions to dismiss Taxpayers' suit for want of subject matter jurisdiction.

II.

The Supreme Court first acknowledged the common law mailbox rule in Rosenthal v. Walker, 111 U.S. 185 (1884). In Rosenthal, a case involving fraud in bankruptcy, the Court explained:

> The rule is well settled that if a letter properly directed *is proved* to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.

Id. at 93 (emphasis added). We subsequently applied the mailbox rule in Crude Oil Corp. v. Commissioner, 161 F.2d 809 (10th Cir. 1947). Crude Oil was a tax deficiency suit arising out of a taxpayer's alleged failure to make a timely capital stock election. Although we did not describe the taxpayer's evidence, we concluded the evidence presented was sufficient to establish the taxpayer enclosed his return in a properly addressed and stamped envelope that was deposited "in time to have been received by the Collector, in the ordinary course of mail, within the statutory filing period." Id. at 810. We stated: "*[p]roof* of due mailing is prima facie evidence of receipt." Id. (emphasis added). "When mail matter is properly addressed and deposited in the

United States mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary course of mail." Id.

In United States v. Peters, 220 F.2d 544 (10th Cir. 1955), however, we rejected application of the mailbox rule in a tax refund suit without citing Crude Oil. Instead, we applied the "physical delivery rule" which deems a tax document filed when it is delivered to and received by the IRS:

> The depositing of the claims for refund in the post office in time for them to reach the post office box or drawer of the Collector in due course of mail before the expiration of the time fixed by law for the filing of such claims did not constitute the filing of them. They were not filed within the intent and meaning . . . of the Internal Revenue Code until they reached the Collector[.]

Id. at 545 (citing United States v. Lombardo, 241 U.S. 73 (1916)).[4]

After Peters, taxpayers in the Tenth Circuit faced substantial uncertainty concerning the timely filing of tax documents. Amidst this confusion, Congress enacted I.R.C. § 7502 in 1954. As originally enacted, § 7502 only applied to the filing of tax documents other than tax returns and payments. See Internal Revenue Code of 1954, ch. 736, 68A Stat. 895. In 1966, Congress amended § 7502 to encompass tax returns and payments as well. See Act of Nov. 2, 1966, Pub. L. No. 89-713, § 5(a), 80 Stat.

---

[4] In Lombardo, the Court held the phrase "shall file" as used in the "White Slave Traffic Act," meant "to deliver to the office and not send through the United States mails. A paper is filed when it is delivered to the proper official and by him received and filed." 241 U.S. at 76 (internal citation omitted); compare I.R.C. § 6072(a) (providing the general rule for the timely filing of personal income tax returns).

1110. The current version of § 7502, which applies in this instance, provides in relevant part:

**§ 7502.    Timely mailing treated as timely filing and paying**
  **(a)  General Rule.**–
    **(1)  Date of delivery.**–If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

* * *

  **(c)  Registered and certified mailing; electronic filing.**–
    **(1)  Registered Mail.**–For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail–
        **(A)** such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
        **(B)** the date of registration shall be deemed the postmark date.
    **(2) Certified mail; electronic filing.**–The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.[5]

---

[5] By its plain language, § 7502(a)(1) applies only when a tax return is in fact delivered to the IRS. See 26 C.F.R. § 301.7502-1(e). The postmark is deemed the date of filing. A Senate report explained the amendment:

The bill . . . provides that the timely mailing of a tax return or payment is to be considered timely filing or timely payment. As a result, where the postmark on an envelope in which an individual income tax return and

Some courts have construed the current version of § 7502 as supplanting the common law mailbox rule entirely.  Specifically, the Second and Sixth Circuits have held, absent a physical postmark, the physical delivery rule applies to tax refund and deficiency suits subject only to the exceptions contained in subsection (c) regarding registered, certified, and electronic mail receipts.  See Deutsch v. Commissioner, 599 F.2d 44 (2d Cir. 1979); Miller v. United States, 784 F.2d 728 (6th Cir. 1986).  In Deutsch, a tax deficiency suit, the taxpayer offered the affidavit of his accountant who stated he mailed a copy of the relevant tax document within the prescribed time period.  The Court held for the IRS as a matter of law, stating "[t]he exception embodied in § 7502 . . . demonstrate[s] a penchant for an easily applied, objective standard."  Deutsch, 599 F.2d at 46.  See also Boccuto v. Commissioner, 277 F.2d 549, 553 (3d Cir. 1960) (stating the exceptions contained within the original version of § 7502 are the only exceptions to the physical delivery rule).  Similarly in Miller, a tax refund suit, the Sixth Circuit held the district court lacked jurisdiction over the taxpayer's

payment are enclosed show that it was mailed on or before the due date, the return and payment will be considered as filed or paid on time even though received after the due date.

S. Rep. No. 1625 (1966), reprinted in 1966 U.S.C.C.A.N. 3676, 3677.  Section 7502(c)(1) meanwhile provides a taxpayer may produce a dated registered mail receipt to establish a prima facie case of delivery and thus guard against the risk of nondelivery. Similarly, per subsection (c)(2), 26 C.F.R. § 301.7502-1(c)(2) & (d) provide a taxpayer may produce a dated certified or electronic mail receipt to establish such case and guard against such risk.

claim for refund where the IRS records failed to establish a refund claim was ever received. The Sixth Circuit so held notwithstanding the taxpayer's offer of proof of timely mailing to the IRS. Relying on Deutsch, the court concluded the only exceptions to § 7502's physical delivery rule are those found in the statute. Miller, 784 F.2d at 731; accord Surowka v. United States, 909 F.2d 148, 150-51 (6th Cir. 1990).[6]

Other courts have held § 7502 does not supplant the common law mailbox rule. Instead, these courts have viewed the issue as an evidentiary matter, holding a taxpayer to a strict standard of proof before invoking a presumption of receipt. Self-serving declarations of mailing, without more, are insufficient to invoke the presumption. See Estate of Wood v. Commissioner, 909 F.2d 1155 (8th Cir. 1990); Anderson v. United States, 966 F.2d 487 (9th Cir. 1992). In Wood, a tax deficiency suit, the Eighth Circuit concluded § 7502 did not "completely displace the common law presumption of delivery." Wood, 909 F.2d at 1160. There, the representative of the estate testified he watched the postmistress of a "one-room" post office "weigh the envelope, put postage on it, cancel it, and put it into the appropriate bundle of outgoing mail." Id. at 1157. The postmistress also testified, recalling she postmarked the envelope and placed it in the outgoing mail. The Commissioner, on the other hand, "adduced

---

[6] In Carroll v. Commissioner, 71 F.3d 1228, 1231 (6th Cir. 1995), the Sixth Circuit reluctantly reaffirmed Miller despite the taxpayer's "unimpeachable proof of mailing." Id. The court noted it had recently reaffirmed Miller and declined to reconsider the decision en banc. Id. at 1232.

no evidence before the tax court that the IRS did not receive the return." Id. The court

rejected the IRS's argument that § 7502 "requires *actual* delivery" under subsection

(a)(1) or proof of delivery by the taxpayer under subsection (c). Id. at 1158. In other

words, the IRS argued "absent registration or certification . . . the taxpayer bears the

risk of loss as to any document which the IRS *claims* not to have actually received." Id.

Instead, the Court read § 7502(c) as a "safe harbor" because Congress intended § 7502

to benefit the taxpayer. See H.R. Rep. No. 1337, reprinted in 1954 U.S.C.C.A.N. 4025.

> Whether or not the common law presumption continues to exist generally, we simply do not agree that by the enactment of § 7502, Congress intended to foreclose application of a presumption of delivery within § 7502(a)(1) *in those cases in which the postmark requirements of the section can be conclusively established*, as here.

Id. at 1160 (emphasis added).[7]

---

[7] The Tax Court's en banc opinion in Estate of Wood v. Commissioner, 92 T.C. 793 (1989) (en banc), aff'd 909 F.2d 1155 (8th Cir. 1990), like the three separate opinions in this case, illustrates the differing views on the question of whether § 7502 supplants the mailbox rule. Eight judges concluded the taxpayer could rely on a presumption that the IRS received a properly mailed document absent evidence to rebut the presumption:

> The prima facie evidence rule of § 7502(c) appears to be a "safe harbor" within § 7502. In other words, if taxpayers mail by registered or certified mail they are assured of having prima facie evidence of delivery by presenting the postmarked receipt. The provision for Congressionally sanctioned, assured method of proof, however, does not in law or logic forbid any other method unless Congress expressed intent to exclude other methods. No such expression exists [in § 7502].

Id. at 797-98. Five judges concurred in the result because of "the rare concurrence of events by which [taxpayer] was able to prove . . . the date of the postmark without physical evidence[.]" Id. at 802. Five judges dissented because "the presumption

The Ninth Circuit followed Wood's reasoning in Anderson, a tax refund suit. In Anderson, the taxpayer testified at trial that she witnessed the postal clerk postmark her return and place the envelope in the mailing pouch. Additionally, a friend who accompanied the taxpayer to the post office testified she saw the taxpayer go into the post office with the return and come out of the post office without the return. The court rejected the IRS's argument that "the provisions of 26 U.S.C. § 7502 set forth the exclusive means available to taxpayers who wish to prove timely filing of a federal tax return or claim for refund." Anderson, 966 F.2d at 489. Rather, the Court held "[a]s applied to the facts of [taxpayer's] case, the language of § 7502 does not set forth an exclusive limitation on admissible evidence to prove timely mailing and does not preclude application of the common law mailbox rule." Id.

> We find that the facts in [taxpayer's] case are analogous, and adopt the
> Eighth Circuit's reasoning in Wood. [Taxpayer] provided direct proof
> of a timely postmark because she actually saw the postal clerk stamp her
> document. In such circumstances, we find that [taxpayer] was able to
> establish that her . . . return was [timely] postmarked . . . .

Id. at 491.

Lastly, two unpublished circuit court decisions addressing the issue at hand are noteworthy. In Davis v. United States, 2000 WL 194111 (Fed. Cir. 2000) (unpublished), the Federal Circuit held a taxpayer's uncorroborated testimony was insufficient "under

---

of delivery upon proof of first class mailing cannot be used to supply the delivery requirement of § 7502." Id.

11

any view of the law" to establish timely filing of a refund claim:

> Even if [taxpayer] were given the benefit of the more liberal approaches
> of the Eighth and Ninth Circuits, his own uncorroborated testimony would
> be insufficient to prove timely filing of his refund claim. . . . [I]n Wood,
> the taxpayer triggered the presumption of timely receipt by the IRS through
> testimony of the postal worker who handled, stamped, and postmarked the
> refund claim.  The taxpayer in Anderson offered corroborating testimony
> from a person who accompanied her to the post office. [Taxpayer]
> presented no testimony, other than his own, to establish that he timely
> mailed his refund claim.  Thus he did not present evidence sufficient
> to trigger a presumption of receipt of the claim by the IRS.

Id. at **3.  In Wade v. Commissioner, 1999 WL 508672 (10th Cir. 1999) (unpublished),

we upheld the Tax Court's finding the taxpayer did not mail his 1984 return in 1988 as

he claimed:

> A return is filed as a matter of law when it is delivered to and received
> by the IRS.  There are exceptions to the "receipt by the IRS" requirement
> where the evidence is persuasive that the taxpayer did file the return.  In the
> instant case, however, there is not nearly enough evidence to establish that
> the tax court clearly erred when it found [taxpayer] did not file his 1984
> return.
>
> [Taxpayer] has presented a 1984 return dated 1988.  He has testified he
> remembers mailing the return immediately before lunch with his accountant
> in 1988.  The only evidence [taxpayer] presents to suggest the Tax Court
> erred, is his own self-supporting testimony at trial.

Id. at **2.

III.

As the case law illustrates, the question of what, if anything, remains of the common law mailbox rule after § 7502 is not easily answered.[8] I do not question that a strict construction of § 7502, such as the approach of the Second and Sixth Circuits (and Judge Hartz), provides "an easily applied, objective standard." Deutsch, 599 F.2d at 46. Yet I am not prepared, based upon § 7502's plain language, to hold a taxpayer may *never* prove delivery to the IRS of the "undelivered return" in the absence of a registered, certified, or electronic mail receipt. In other words, given the uncertainty as to what extent, if any, Congress intended to supplant the mailbox rule in enacting § 7502, I decline to hold the production of a registered, certified, or electronic mail receipt are the only means by which a taxpayer may establish timely delivery.

Congress is the final arbiter of tax policy, not this Court. If Congress wishes to restrict the taxpayers' means of proving delivery of tax documents, Congress can easily amend § 7502 to establish "an easily applied, objective standard." Section 7502's silence, however, is insufficient to entirely supplant the mailbox rule because "[i]t is a well-established principle of statutory construction that the common law ought not to be deemed to be repealed, unless the language of the statute be clear and

---

[8] See generally Kimberly C. Metzger, Interpretation of the § 7502 Timely-Mailing, Timely-Filing Requirements: Carroll v. Commissioner and the Liberal/Conservative Interpretation Dilemma, 28 U. Tol. L. Rev. 767 (1997). For a list of the differing federal court decisions addressing I.R.C. § 7502's effect on the common law mailbox rule, see Research Institute of America, Federal Tax Coordinator ¶ T-10774 (2d ed. 2004).

13

specific for this purpose." Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 35 (1983) (internal quotations, brackets, and ellipses omitted). I decline to adopt the IRS's argument that § 7502 abolishes the mailbox rule because, contrary to Judge Hartz's view, the present language of § 7502 *does not compel* such a result. "Congress must change the statute's words if a different result is desired as a matter of tax policy." Commissioner v. Soliman, 506 U.S. 168, 180 (1993) (Blackmun, J. concurring).[9]

At the same time, I deem unwise Judge Seymour's apparent unconditional endorsement of the mailbox rule based solely upon a taxpayer's uncorroborated self-serving testimony of mailing, especially where that taxpayer has a history of filing untimely returns. Such an endorsement would necessarily result in a jury trial every time a taxpayer, regardless of the surrounding circumstances, alleges timely mailing. No Circuit Court has made such an endorsement and, unlike Judge Seymour, I decline Taxpayers' invitation to be the first. I agree with the Eighth and Ninth Circuits' narrow holdings in Wood and Anderson, which turned on (1) evidence of an actual postmark, and (2) evidence of mailing apart from the taxpayer's self-serving testimony. Like the

---

[9] Judge Hartz criticizes the venerable rule of construction (of which Congress undoubtedly is aware) that statutes in derogation of the common law should be strictly construed. He suggests replacing it (at least in this case) with a "compelling inference" test. See Concur. Op. at 20-21. I doubt such a test would bring any more certainty to statutory construction. In any event, I cannot agree that § 7502, reasonably construed, compels the inference that Congress intended to entirely abolish the common law mailbox rule in tax cases where compelling evidence of mailing exists.

Eighth Circuit, I would require more than mere proof of mailing, such as direct proof of postmark which is "verifiable beyond any self-serving testimony of a taxpayer who claims that a document was timely mailed." Wood, 909 F.2d at 1161. As the Ninth Circuit opined in Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir. 1988): "The Service, of course, does not have to take a taxpayer's unsupported word, but when a taxpayer with an unblemished record for paying taxes produces *circumstantial evidence supporting his word*, the government needs more than a skeptical smile to support its doubt of credibility." (emphasis added).

Allegations of mailing are easy to make and hard to disprove. Cf. Benavidez v. City of Albuquerque, 101 F.3d 620, 626 (10th Cir. 1996) (recognizing that proving a negative may be difficult). Because the taxpayer, not the IRS, controls the mailing of a tax return, the taxpayer, not the IRS, has access to any evidence demonstrating the return has been mailed. To establish a presumption of delivery outside the exceptions to the physical delivery rule contained in § 7502, the burden in these types of cases thus rests on the taxpayer to make "a meaningful evidentiary showing" at the outset. Cf. National Archives and Records Admin v. Favish, 124 S. Ct. 1570, 1582 (2004).[10]

---

[10] As Judge Seymour suggests, allegations of non-receipt may be as difficult to disprove as allegations of receipt. See Dissent. Op. at 23. The critical difference is the burden of proof in these types of cases is on the taxpayer, not the IRS. Only after the taxpayer proffers sufficient proof to raise a presumption of timely mailing does the burden of production shift to the IRS to proffer sufficient proof of non-receipt.

15

To be sure, the IRS loses tax returns; nevertheless, the taxpayer is in the best position with the clock running to protect himself by procuring independent evidence of postmark and/or mailing, whether by mail receipt, corroborating testimony, or otherwise. This is especially true where a refund or credit is involved because no cancelled check will exist to verify receipt. Accordingly, I would hold that absent some proof of an actual postmark or dated receipt, a presumption that tax documents allegedly mailed to the IRS were in fact received does *not* arise based solely upon a taxpayer's self-serving testimony.[11] Despite Judge Seymour's contrary assertion, such a holding does not require a credibility determination. Rather, such testimony alone, assuming its truth, is insufficient as a matter of law to establish a presumption of timely delivery.

IV.

In this case, Taxpayers, who have a history of filing belated returns, offered no independent proof of a postmark or any evidence of mailing apart from Mr. Sorrentino's self-serving testament. Unlike Judge Seymour, I do not believe Mr. Sorrentino's testament is sufficient to invoke the mailbox rule's rebuttable presumption. Judge Seymour's logic is flawed, in my opinion, because she apparently believes the mailbox rule creates the "factual presumption." See Dissent. Op. at 23. To the contrary, as her

_____

[11] A taxpayer who timely mails his tax return should know well before expiration of the limitations period whether the IRS in fact received the return. To illustrate, after expiration of the filing period, a taxpayer claiming a refund may normally expect such refund within forty-five days, see I.R.C. § 6611(e), well within § 6511's three year statute of limitation.

16

recitation of the mailbox rule reveals, see id. at 22, *proper and timely mailing raises* a rebuttable presumption that the mailing was in fact received by the addressee. I simply would hold Taxpayers to their burden of making a meaningful evidentiary showing of "proper and timely" mailing before invoking the presumption.

In their respective depositions, Taxpayers stated they signed and dated their 1994 joint return on March 1, 1998. Perhaps so, but unlike Judge Seymour, I do not find such particularly probative of "proper and timely" mailing. See id. at 23. Importantly, on this point, Mrs. Sorrentino offers no proof--she did not mail the return or see Mr. Sorrentino prepare the return for mailing or take the return to the post office. Mr. Sorrentino could not recall the specific date he mailed the return, but stated he mailed it to the IRS, postage affixed, sometime during the first five days of March 1998. He did not use certified or registered mail; nor did he see any postal worker stamp a postmark on the envelope. Mr. Sorrentino further stated that in September 1998, over six months after mailing his return, he contacted the IRS to inquire on the status of the refund. When informed the IRS had no record of receiving the return, he faxed the IRS a copy of the return which was stamped "Received 10-2-98, IRS, Austin Texas." Under any view of Circuit Court precedent construing the current version of I.R.C. § 7502, Mr. Sorrentino's self-serving testimony, without corroborating evidence, is insufficient to raise a presumption the IRS received Taxpayers' 1994 tax return prior to October 2, 1998.

17

Accordingly, we REVERSE the judgment of the district court and REMAND with instructions to dismiss Taxpayers' refund suit for want of subject matter jurisdiction. The district court's order awarding fees and costs to the Taxpayers pursuant to I.R.C. § 7430 is VACATED.

**HARTZ**, Circuit Judge, concurring in the result:

I concur with Judge Baldock in reversing the judgment of the district court and remanding with instructions to dismiss Taxpayers' refund suit for want of subject matter jurisdiction. I respectfully disagree, however, with respect to the grounds for reversal.

Both Judge Baldock and Judge Seymour believe that the common-law mailbox rule survives the enactment of I.R.C. § 7502. They apparently read that statute as merely providing a safe harbor for proving timely delivery of a tax document or payment—the taxpayer is home free if the taxpayer has a receipt for registered or certified mail, but the taxpayer may still be able to prove timely delivery by other evidence. I do not share that belief.

If § 7502(c) had only paragraph "(1)"—which states that proper registration of an item of mail is prima facie proof of timely delivery—I might agree with the interpretation of § 7502 shared by the other members of this panel. But it is too difficult to square § 7502(c)(2) with their interpretation. In 1958, § 7502(c) was amended by adding to the registered-mail provision, the following language:

18

(2) Certified mail.—The Secretary [of the Treasury] is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail.

If the common-law mailbox rule survived enactment of § 7502, this new paragraph is problematic in two ways. First, why did Congress bother to enact a provision enabling the Secretary to issue a certified-mail regulation? Under I.R.C. § 7805(a) the Secretary has general authority to "prescribe all needful rules and regulations for the enforcement of [the I.R.C.]." This authority is frequently and forcefully exercised. An interpretative regulation under § 7805 could have set forth how the common-law mailbox rule applies to certified mail. I recognize that under current law an explicitly authorized regulation may be entitled to greater deference in the courts than a regulation authorized only by § 7805. See generally Gregg D. Polsky, *Can Treasury Overrule the Supreme Court?*, 84 B.U. L. Rev. 185, 210-11 (2004). I do not, however, believe that such a subtlety could have motivated the 1958 Congress.

Second, if the common-law mailbox rule survived § 7502, why did Congress limit the Secretary's regulatory authority to promulgating regulations solely with respect to certified mail? Why not also give the Secretary explicit authority to issue regulations concerning when evidence regarding regular mail constitutes prima facie proof of timely delivery? There may be clever answers to my (intended-to-be) rhetorical questions concerning § 7502(c)(2); but I suspect they would smell of the lamp.

19

Judge Baldock's analysis of the matter invokes the "'well-established principle of statutory construction that the common law ought not to be deemed to be repealed, unless the language of the statute be clear and specific for this purpose.'" Op. at 13-14 (quoting Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 35 (1983)). This canon of construction, however, can eviscerate the will of Congress if not confined to its proper sphere. It is, at most, an aid in interpreting statutory language. There is no public policy against changing the common law. The canon should not be used (misused), as it has been in the past, as a tool of courts hostile to legislative innovation. See generally Roscoe Pound, *Common Law and Legislation*, 6 Harv. L. Rev. 383 (1908). As Dean Pound wrote almost a century ago:

> The proposition that statutes in derogation of the common law are to be construed strictly . . . assumes that legislation is something to be deprecated. As no statute of any consequence dealing with any relation of private law can be anything but in derogation of the common law, the social reformer and the legal reformer, under this doctrine, must always face the situation that the legislative act which represents the fruit of their labors will find no sympathy in those who apply it, will be construed strictly, and will be made to interfere with the status quo as little as possible. . . . Some regard this attitude toward legislation as a basic principle of jurisprudence. Others are content to make of it an ancient and fundamental principle of the common law. In either event they agree in praising it as a wise and useful institution. It is not difficult to show, however, that it is not necessary to and inherent in a legal system; that it is not an ancient and fundamental doctrine of the common law; that it had its origin in archaic notions of interpretation generally, now obsolete, and survived in its present form because of judicial jealousy of the reform movement; and that it is wholly inapplicable to and out of place in American law of today.

Id. at 387-88 (footnotes omitted).

20

Of course, statutes may employ terms of art that have a meaning provided by the common law, and one can ordinarily assume that the statutory meaning does not depart from the common-law meaning. Also, the common law is an essential component of the fabric of the law, providing background assumptions against which statutory language should be read. But we should not impose a "clear-statement" rule requiring that statutory language explicitly negate every common-law proposition on the subject. We must not forget that our task is to construe the statutory language, not to establish an obstacle course for those who draft the laws. The persuasiveness of Norfolk Redevelopment, for example, rests on the point that the statute at issue took the pertinent language from a previous statute that clearly preserved the common-law rule.

In the case before us, the statutory language compels the inference that § 7502 was intended to occupy the field, providing the sole means by which timely delivery can be proved. Because Taxpayers' proof does not meet the statutory requirements, their refund claim must be treated as untimely.

**SEYMOUR**, Circuit Judge, dissenting.

While I agree with Judge Baldock's conclusion that I.R.C. § 7502 does not entirely supplant the common law mailbox rule, Op. at 13-14, I must dissent from his application of the mailbox rule in this case. Judge Baldock's opinion relies, improperly in my judgment, upon a credibility determination to dismiss the Sorrentinos' suit at the summary

21

judgment stage and erects an unreasonable barrier to the mailbox rule's implementation.

"Under the common law mailbox rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193-94 (1884)). According to Judge Baldock, the Sorrentinos' "self-serving testimony, without corroborating evidence, is insufficient to raise a presumption the IRS [timely] received Taxpayers' 1994 tax return." Op. at 17. But any testimony by a party to a suit is self-serving, yet it is clearly admissible to support his or her case in a motion for summary judgment. *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 (at summary judgment, "[a]n affidavit of a party that is on file in the case will be considered by the court"). The self-serving quality of the testimony goes to its credibility, which is to be judged by the trier of fact. Credibility determinations are not to be made at summary judgment, and are certainly not to be made by an appellate court. *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (noting credibility determinations are inappropriate at summary judgment); *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (explaining trial court is in unique position to judge credibility and its determinations deserve great deference from appellate court).

I am doubtful of the worth of the corroborating evidence Judge Baldock's rule requires. The corroborating evidence in *Anderson*, 966 F.2d at 489, consisted of the

22

testimony of a friend who accompanied the taxpayer to the post office, watched the taxpayer go in with her tax return, and exit without it. *Id.* I question why this evidence is substantially more convincing than that presented by the Sorrentinos, including the sworn testimony of Mr. and Mrs. Sorrentino that they signed the return in early March, the sworn testimony of Mr. Sorrentino that he mailed the return in early March, and a copy of the return dated March 1, 1998.

More significantly, I question the wisdom of a rule which, by definition, denigrates the reliability and truthfulness of the scores of average taxpayers who prepare their own tax returns and place them in the U.S. mail without accompanying witnesses. According to the majority, the courts cannot trust these taxpayers unless they have brought along friends who will swear to the mailing of their returns. Such a rule seems to me completely unwarranted.

Ultimately, however, I dissent because Judge Baldock's evidentiary hurdle to the factual presumption of the mailbox rule runs counter to the rule's very purpose. Judge Baldock justifies his conclusions by stating: "[a]llegations of mailing are easy to make and hard to disprove." Op. at 15. Of course, the same is true of allegations of non-receipt. The mailbox rule is designed to redress this state of inconclusive evidence, and does so, *initially*, in favor of the party claiming mailing. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 963 (9th Cir. 2001) ("the presumption of receipt established by the mailbox rule [is applied] precisely to avoid the type of swearing contest

23

in which the parties are presently involved"). The I.R.S. might very well defeat the factual presumption created by the Sorrentinos' evidence by successfully attacking the couple's credibility or demonstrating effective procedures within the I.R.S. that prevent loss of returns. At this stage in the litigation, however, we have only the sworn testimony of the Sorrentinos that they both signed the return in early March, Mr. Sorrentino's sworn testimony that he promptly mailed the return after signing it, a copy of that return, and the I.R.S.'s allegation of non-receipt. The mailbox rule's presumption of receipt steps in to create a genuine issue of material fact, and the majority's dismissal of the case at this juncture is improper.

For the foregoing reasons, I respectfully dissent.