# United States Court of Appeals
## For the First Circuit

No. 10-2151

D. CHARLES DICKOW, as Executor of the
Estate of Margaret W. Dickow,

Plaintiff, Appellant,

v.

UNITED STATES; INTERNAL REVENUE SERVICE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Dennis J. Kelly, with whom Andrea L. Martin and Burns & Levinson LLP were on brief, for appellant.
Rachel I. Wollitzer, Attorney, Tax Division, Department of Justice, with whom Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, Thomas J. Clark, Attorney, Tax Division, Department of Justice, and Carmen Milagros Ortiz, United States Attorney were on brief, for defendants.

August 19, 2011

**LYNCH**, **Chief Judge**.    Plaintiff D. Charles Dickow, Executor of the Estate of Margaret W. Dickow, brought suit in 2009 seeking a refund of federal estate taxes in the sum of $237,813.48 that he says were erroneously paid.

Pursuant to 26 U.S.C. § 6511(a), a taxpayer seeking such a refund must file his refund claim within three years of filing the tax return or within two years from the time the tax was paid, whichever is later.  Furthermore, for taxpayers who claim a refund within three years of filing the return, § 6511(b)(2)(A) substantively limits the amount of any such refund to the portion of the tax paid within the three years immediately preceding the refund claim, plus the period of any extension of time for filing the return.

Dickow paid the estate taxes on October 10, 2003, and filed the estate tax return on September 30, 2004, but did not file the refund request until September 10, 2007.  The IRS denied the claim on the ground that the refund sought was outside the look-back period set forth in § 6511(b)(2)(A).  In this suit Dickow asserts that the IRS position is wrong as a matter of law, and secondarily, that the IRS is equitably estopped by its conduct. Each of these arguments presents a question of first impression in the courts of appeals.

The precise question on appeal is whether it was error for the IRS to conclude that § 6511(b)(2)(A) and its implementing

-2-

regulations bar the requested refund because Dickow was not entitled to a <u>second</u> extension of the filing deadline that determined the estate's eligibility for the refund.[1] The answer to this question turns on interpretation of 26 U.S.C. § 6081, governing extensions of time, and the regulations promulgated by the IRS within its authority under the Internal Revenue Code.

The equitable estoppel claim is not available under <u>United States</u> v. <u>Brockamp</u>, 519 U.S. 347 (1997), and is, in any event, meritless. We affirm the district court's dismissal for lack of jurisdiction. <u>See</u> <u>Dickow</u> v. <u>United States</u>, 740 F. Supp. 2d 231 (D. Mass. 2010).

## I.

The underlying facts are undisputed. Margaret Dickow died on January 15, 2003. Pursuant to 26 U.S.C. § 6075(a), the federal tax return for her estate was due October 15, 2003, nine months after her death. On October 10, 2003, plaintiff Dickow, as executor of the estate, mailed to the IRS a completed IRS Form 4768 (Application for Extension of Time to File a Return and/or Pay U.S. Estate Taxes). Dickow enclosed a check for $945,000 in payment of the estimated estate tax due. The IRS received the extension application and check on October 14, 2003. Pursuant to Treasury

---

[1] The question of whether there was a substantive basis for the claimed refund is not before us. The only issue is whether the request was properly denied under the look-back provision of § 6511(b)(2)(A).

-3-

Regulation § 20.6081-1(b), the estate's filing deadline was automatically extended by six months to April 15, 2004.

On March 23, 2004, Dickow submitted to the IRS what he characterizes as a second extension request: an alteration of a standardized Form 4768 in which he attempted to request an additional six-month extension of time in which to file the estate tax return. This time, Dickow modified the form by adding the typed words "REQUEST FOR SECOND EXTENSION" at the top of the first page. In the section entitled "Payment To Accompany Extension Request," Dickow also added a new line with the typed words "Amount Previously Paid" and "$965,000."[2] Dickow did not check any of the boxes on the form that identified which of several recognized grounds qualified him for a filing extension.[3] Dickow did attach to the form a statement that he was requesting "an additional six month period of time to file [the federal estate tax return] . . . because, despite due diligence on his part, he has not received an appraisal of a real estate asset which constitutes a large portion of the Estate." In the section of the form entitled "Extension of

_____

[2] The actual amount previously paid by the estate was $945,000.

[3] The recognized grounds listed on the form are (1) Automatic Extension, available to those "applying for an automatic 6-month extension of time to file"; (2) Additional Extension, available to "executor[s] out of the country applying for an extension of time to file in excess of 6 months"; and (3) Extension for Cause, available to those who "have not filed a request for an automatic 6-month extension and the time for filing such a request has passed."

-4-

Time to Pay," Dickow typed in "October 15, 2004" as his requested extension date.

The IRS received Dickow's second extension request on March 28, 2004. The IRS files include a copy of the request indicating that the IRS denied Dickow an extension of time to file but granted Dickow an extension of time to pay. Specifically, on the second page of the request, in the section that begins "The application for extension of time to file," the option "Not approved because" is marked with an "X" and stamped with the words "Previous extension request granted to 04/15/04. By law, extension of time to file may be granted for no longer than six months. Please file your return without delay to avoid additional penalties and interest." Also on the second page, in the section that begins with "The application for extension of time to pay," the option "Approved" is marked with an "X" and annotated with the words "To: 10/15/04." The IRS did not send the estate a notification that it was granting or denying the request for a second extension of time to file.

Dickow did not file the estate's federal tax return on April 15, 2004. The IRS Form 4340 Certificate of Assessments, Payments, and Other Specified Matters for the estate includes entries, dated August 16 and October 11, 2004, which document taxpayer delinquency notices that the estate's tax return was overdue, but Dickow asserts that he never received any such

-5-

delinquency notice. We assume, taking all inferences in Dickow's favor, that he did not receive any delinquency notice nor did he receive a copy of the IRS stamped response to his request denying it and stating that "[b]y law, extension of time to file may be granted for no longer than six months."

On September 30, 2004, Dickow mailed the estate's federal tax return to the IRS. The return claimed a refund of $337,139.81 based on the estate's overpayment of estimated estate taxes in October 2003. The IRS received the return on October 5 and refunded the requested amount on November 1.

On September 10, 2007, Dickow sent the IRS an amended estate tax return in which he claimed a refund of $574,953.29, consisting of the $337,139.81 that had previously been refunded and an additional $237,813.48. On October 15, 2007, the IRS denied Dickow's claim for the additional refund.[4]

On May 14, 2009, Dickow filed suit in the United States District Court for the District of Massachusetts against the IRS, alleging a claim to the additional $237,813.48 under the theory that he was entitled to the refund under 26 U.S.C. § 6511 (Count I) and, in any event, under a theory of equitable estoppel (Count II). Both parties moved for summary judgment.

---

[4] The refund amount specified in the IRS claim disallowance notice is $239,768.56, which represents the $237,813.48 requested estate tax refund plus a refund of money paid in connection with a 1998 gift tax.

-6-

The district court determined that Dickow's refund request did not comply with § 6511(b)(2)(A).[5] Dickow, 740 F. Supp. 2d at 237. To determine whether Dickow received filing extensions that rendered his refund request timely, the court analyzed 26 U.S.C. § 6081(a) and its implementing regulations. The court determined that § 6081(a) was ambiguous as to whether the IRS could grant more than one six-month extension. However, the court found that the implementing regulations, as codified in Treasury Regulation § 20.6081-1, were clear that the IRS lacked the authority to grant Dickow more than one six-month extension. Because Dickow's claim was filed more than three years plus six months after his payment, his refund request was untimely. Dickow, 740 F. Supp. 2d at 236-37.

On the issue of equitable estoppel, the district court concluded that under Brockamp, a plaintiff may not extend the time for filing a tax refund claim on the basis of equitable estoppel. Dickow, 740 F. Supp. 2d at 237-38. And even if the plaintiff were not so precluded, the court held, Dickow's claim was insufficient as a matter of law because Dickow did not show that the government

_____

[5] Section 6511(b)(2)(A) provides in relevant part: "If the claim was filed by the taxpayer during the 3-year period prescribed in [§ 6511(a)], the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A).

-7-

engaged in "affirmative misconduct." Id. at 239. The court dismissed the case for lack of jurisdiction.

## II.

We review the district court's grant of summary judgment de novo. FleetBoston Fin. Corp. v. Alt, 638 F.3d 70, 76 (1st Cir. 2011). In any event, the dispositive issues are ones of law, which we review de novo. United States v. Meléndez-Santiago, 644 F.3d 54, 59 (1st Cir. 2011).

A.        The Statutory/Regulatory Argument

Under 26 U.S.C. § 6511, there are limits on the time within which a taxpayer may claim a refund of overpaid taxes. In "look-back" situations, § 6511 also limits the amount of the claim for a refund or credit by reference to time period. As the Supreme Court noted in Commissioner v. Lundy, 516 U.S. 235 (1996), § 6511 "contains two separate provisions for determining the timeliness of a refund claim: . . . a filing deadline . . . [and] two "look-back" periods." Id. at 239-40.

Subsection (a) of § 6511, entitled "Period of limitation on filing claim," provides that any such refund request must be "filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). That provision is not at issue.

What is at issue[6] is subsection (b) of § 6511, which is entitled "Limitation on allowance of credits and refunds." It includes subsection (b)(1), which addresses "Filing of claim[s] within [the] prescribed period," and subsection (b)(2), which addresses "Limit[s] on amount of credit or refund." 26 U.S.C. § 6511(b). Subsection (b)(2) includes a "look-back" provision applicable where "the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a)." 26 U.S.C. § 6511(b)(2)(A). The look-back provision limits any requested refund or credit to "the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." Id. Dickow attempted to take advantage of this look-back provision. Dickow was granted one automatic six-month extension, which clearly extended the look-back period to March 10, 2004. The dispute is over the second request for extension.

These provisions in § 6511 for timely filing and the time period for look-back are jurisdictional. See 26 U.S.C. § 7422(a) (providing that no suit for a tax refund may be maintained unless

_____

    [6] Dickow's refund request was filed on September 10, 2007. Because Dickow filed the estate's return on October 5, 2004, the refund request is timely under the three-year provision specified in § 6511(a). The issue before this court is whether Dickow's refund request also meets the period of time requirements for such a refund. Dickow may only recover taxes paid in the three years preceding the refund request plus any extension of time he was granted by the IRS. Dickow paid the taxes at issue on October 14, 2003.

"a claim for a refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof").  Lundy noted that § 6511(a) "make[s] timely filing of a refund claim a jurisdictional prerequisite to bringing suit" and held that the Tax Court lacked jurisdiction to award a refund where the refund did not fall within the applicable look-back period under § 6511(b)(2).  516 U.S. at 240, 241-53; accord Oropallo v. United States, 994 F.2d 25, 26-28 (1st Cir. 1993) (per curiam).  Where, as here, a refund claim fails to satisfy these provisions, it must be dismissed for lack of subject matter jurisdiction.

We conclude that there is no error in the position of the IRS that it did not have the authority to and did not grant Dickow a second six-month extension.

We apply the principles of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under Chevron, we ask first if Congress has addressed the precise question at issue.  Id. at 842.  Where the statutory text is ambiguous, we ask whether the agency's chosen interpretation is a "reasonable interpretation" of the enacted text.  Id. at 844. Recently, in Mayo Foundation for Medical Education & Research v. United States, 131 S. Ct. 704 (2011), the Supreme Court confirmed that "the principles underlying . . . Chevron apply with full force in the tax context. . . .  Filling gaps in the Internal Revenue

-10-

Code plainly requires the Treasury Department to make interpretive choices for statutory implementation at least as complex as the ones other agencies must make in administering their statutes." Id. at 713 (rejecting the argument that the rule in Nat'l Muffler Dealers Ass'n v. United States, 440 U.S. 472 (1979), which is less deferential than Chevron, applies to IRS regulations). We may not disturb the IRS rule unless it is "arbitrary or capricious in substance, or manifestly contrary to the statute." Id. at 711 (quoting Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 242 (2004)) (internal quotation marks omitted).

Under Chevron step one, we begin with the plain text of 26 U.S.C. § 6081, which authorizes the IRS to "grant a reasonable extension of time for filing any return" but specifies that "no such extension shall be for more than 6 months." 26 U.S.C. § 6081. We agree that the text alone makes clear that no single extension may be for longer than six months, but the statutory language itself does not say whether successive extensions may be given. Congress has not addressed the precise question at issue.

We turn to Chevron step two, in which we identify the IRS interpretation and assess its reasonableness. The IRS position in this case is consistent with its interpretation of § 6081 in the regulations it has promulgated under its statutory authority. Treasury Regulation § 20.6081-1 sets forth only two categories of extensions for filing an estate tax return. The first, set forth

-11-

in § 20.6081-1(b), allows a single automatic six-month extension upon the timely filing of a Form 4768 extension application. Id. The second category, set forth in § 20.6081-1©, identifies three types of extensions that may be granted "for good cause shown." Id. Such "good cause" extensions may be granted only to (1) an estate that did not file a request for an automatic extension prior to the due date for the estate tax return, (2) an estate that is required to file forms other than the estate tax return, or (3) an executor who is abroad and is requesting an additional extension beyond the six-month automatic extension. Id. A taxpayer seeking a "good cause" extension within these categories must also file a Form 4768 with a "detailed explanation of why it is impossible or impractical to file a reasonably complete return by the due date." Id. The regulations are clear that even requests for extensions within these categories are still in the IRS's discretion.

The IRS argues that its interpretation avoids "the unreasonable and illogical result of allowing an unlimited number of extensions of a return filing deadline, and thereby indefinitely postponing the filing of the return." The IRS argues that such a result would effectively render the six-month limitation superfluous.

Like the regulations at issue in Mayo, these regulations were issued pursuant to explicit congressional authorization to "prescribe all needful rules and regulations for the enforcement"

-12-

of the Internal Revenue Code.  26 U.S.C. § 7805(a); see Mayo, 131 S. Ct. at 714.  They were also promulgated pursuant to notice and comment procedures, "a 'significant' sign that a rule merits Chevron deference."  Mayo, 131 S. Ct. at 714 (quoting United States v. Mead Corp., 533 U.S. 218, 230 (2001)); see Estate Tax Regulations, 23 Fed. Reg. 4529, 4592 (June 24, 1958); Estate Tax Return, 66 Fed. Reg. 38,544, 38,545 (July 25, 2001).

These regulations satisfy Chevron's reasonableness requirement.  The IRS's limitation on extensions offers a sensible solution to the agency's administrative needs and is consistent with the statutory text.  More than a decade ago, it was true that "[t]he IRS processes more than 200 million tax returns each year" and "issues more than 90 million refunds."  Brockamp, 519 U.S. at 352.  IRS filing deadlines and extension rules are crucial to handling that volume.  The regulatory scheme as the IRS has promulgated it also provides clarity as to limits.  It clearly sets forth rules based on identified categories of taxpayers.  Thus, for example, the regulations allow further extensions beyond one six-month extension only to executors abroad who can show good cause.  Such interpretive line drawing lies at the heart of Chevron deference.  Indeed, "[i]n an area as complex as the tax system, the agency Congress vests with administrative responsibility must be able to exercise its authority to meet changing conditions and new

problems."  Bob Jones Univ. v. United States, 461 U.S. 574, 596 (1983).

It is true that the regulations do not themselves explicitly say that there may be only one extension for executors who are not abroad.  Nonetheless, the regulations provide for only one extension in the form of the automatic extension (or, in lieu of that extension, the two categories of good-faith extensions where the automatic extension is not used or available), except for executors abroad who request an additional six-month extension beyond the automatic extension.

We think the regulations are clear when read as a whole that no second extension was available to be granted on the facts of this case.  Dickow had already received the automatic extension, was not an executor who was abroad, and did not qualify for any of the categories for "good cause" extensions.

The regulations rather pointedly do not say that the IRS has the discretion to accept or act upon applications for extensions based on any type of general "good cause" claim other than the three types explicitly set forth in § 20.6081-1©.  Further, the regulations refer repeatedly to Form 4768, which by

its terms does not allow for the extension sought here.[7]  Thus, in our view, Chevron deference requires that the IRS position prevail.

Moreover, even if there were some ambiguity in the Treasury Regulations, the IRS would still prevail.  The IRS's interpretation of its own regulations is entitled to deference.  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) ("[T]he agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" (quoting Udall v. Tallman, 380 U.S. 1, 16-17 (1965)) (internal quotation marks omitted)); Mead, 533 U.S. at 234-35.  Here, the Internal Revenue Manual states that "[u]nless the executor is out of the country, the maximum extension of time to file is 6 months from the due date of the applicable return."  See IRM § 4.25.2.1.1.2 (Sept. 11, 2009).

The IRS did not have the authority to grant Dickow a second six-month extension, so his look-back period extended only to March 10, 2004.  Because this look-back period does not cover the estate's payment in October 2003, Dickow's refund claim must be dismissed for lack of jurisdiction.

---

[7]  Our views may be at some tension with the Second Circuit's decision in Eastman Machine Co. v. United States, 841 F.2d 469 (2d Cir. 1988), but we note that Eastman did not address a Chevron argument and was decided well before Mayo.

B.        Equitable Estoppel

Dickow argues that even if the IRS had no authority to grant a second extension, the IRS is equitably estopped from denying his refund claim because it "misrepresented" to Dickow that the second extension had been granted by not telling him explicitly that the request had been denied. Dickow's claim fails for two separate reasons.

First, Dickow's equitable estoppel claim fails because § 6511 is not subject to equitable exceptions under the Supreme Court's decision in Brockamp, which held that courts cannot "toll, for nonstatutory equitable reasons, the statutory time (and related amount) limitations for filing tax refund claims set forth in § 6511." 519 U.S. at 348. In Brockamp, the Supreme Court declined to equitably toll § 6511's limitations on filing and on recovery after two taxpayers filed late refund claims due to mental disabilities. Id. Analyzing the plain text of the statute, the Court explained that "§ 6511 . . . sets forth its limitations," including § 6511(b)(2)(A), "in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." Id. at 350. The Court determined that this "detailed" and "technical" language, coupled with the explicit listing of exceptions in § 6511(d), "indicate[d] . . . that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute." Id. at 352. The

Court expressed the additional concern that reading equitable exceptions into § 6511 "could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims." Id. The Court concluded that "[t]he nature and potential magnitude of [this] administrative problem suggest that Congress" did not intend equitable exceptions to apply to refund claims under § 6511. Id. The Court's reference to "equitable exceptions" and the rationale of its holding eliminate Dickow's attempts to parse between equitable estoppel and equitable tolling. We note this court had earlier held in Oropallo that equitable tolling was not available in § 6511(a) refund cases.

Even if Brockamp did not govern here, Dickow has not come close to establishing the elements of equitable estoppel:

> (1) the party to be estopped made a "definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it"; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the "reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."

Ramírez-Carlo v. United States, 496 F.3d 41, 49 (1st Cir. 2007) (alterations in original) (quoting Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)). The plaintiff's burden is especially high when he seeks to equitably estop the government. See Heckler, 467 U.S. at 60 ("[T]he Government may not be estopped on the same terms as any other litigant."). The plaintiff must show that he

-17-

"reasonably relied on some 'affirmative misconduct' attributable to the sovereign." <u>Frillz, Inc.</u> v. <u>Lader</u>, 104 F.3d 515, 518 (1st Cir. 1997) (quoting <u>United States</u> v. <u>Ven-Fuel, Inc.</u>, 758 F.2d 741, 761 (1st Cir. 1985)) (internal quotation mark omitted).  Affirmative misconduct is "an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party." <u>Ramírez-Carlo</u>, 496 F.3d at 49 (quoting <u>Watkins</u> v. <u>U.S. Army</u>, 875 F.2d 699, 707 (9th Cir. 1989) (en banc)) (internal quotation mark omitted).

We see no affirmative concealment or misrepresentation by the IRS.  The argument of estoppel by silence on the part of the busy IRS is, on these facts, simply a non-starter.  That is emphatically the case where there is no statute or regulation which requires the IRS to notify an estate that an extension has been denied.  <u>Accord</u> <u>Baccei</u> v. <u>United States</u>, 632 F.3d 1140, 1147 (9th Cir. 2011) (holding that "[t]he IRS's failure to inform a taxpayer that he has not properly requested an extension is mere inaction that cannot support a claim of equitable estoppel" because it does not rise to the level of affirmative misconduct).[8]

---

[8]    Similarly, we reject Dickow's argument that he somehow gained a right to be given such notice under the Internal Revenue Manual.  <u>See</u> <u>United States</u> v. <u>Horne</u>, 714 F.2d 206, 207 (1st Cir. 1983) (per curiam) (The provisions in the Internal Revenue Manual "govern the internal affairs of the Internal Revenue Service.  They do not have the force and effect of law." (quoting <u>Einhorn</u> v. <u>DeWitt</u>, 618 F.2d 347, 350 (5th Cir. 1980)) (internal quotation mark

-18-

Beyond that, it was not reasonable for Dickow to rely on his customized alteration of a standard government form which on its face did not allow for his request for an extension. And it was not reasonable for him not to inquire as to the success of his invention or to take silence as an affirmative grant of an extension.

The estoppel claim is both unavailable and, even if it were available, meritless.

### III.

The judgment of the district court is affirmed. Costs are taxed against Dickow.

omitted)); accord Carlson v. United States (In re Carlson), 126 F.3d 915, 922 (7th Cir. 1997) ("Procedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers.").