# United States Court of Appeals
## For the First Circuit

No. 11-1426

MAINE MEDICAL CENTER,

Plaintiff, Appellant,

v.

UNITED STATES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Robert H. Stier, Jr., with whom Shelli Li Calland, Joshua D. Dunlap, Michael A. Schlanger, Covington & Burling LLP, and Pierce Atwood LLP were on brief, for appellant.
Robert William Metzler, Attorney, Tax Division, Department of Justice, with whom Tamara W. Ashford, Deputy Assistant United States Attorney, Renee W. Bunker, Ellen Page DelSole, John A. Dudeck, Jr., Stephen T. Lyons, and Margaret D. McGaughey were on brief, for appellee.

March 30, 2012

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL**, <u>**Circuit Judge**</u>.  Maine Medical Center's (MMC) tax refund suit stalled when the district court found that jurisdictional discovery was not warranted and that without such discovery, MMC could not meet its burden of demonstrating jurisdiction.  MMC appealed the district court's judgment for the government, arguing that it had offered sufficient evidence to merit jurisdictional discovery.  Ultimately, MMC did not make an adequate threshold showing that its refund claim was timely filed, and thus the district court ruled that it did not have jurisdiction to hear the case.  After careful review, we affirm.

## I. Facts & Background

The facts of this case are largely undisputed.  As early as August 23, 2004, Maine Medical Center began to look into filing a tax refund claim for reimbursement of taxes paid under the Federal Insurance Contributions Act (FICA) on behalf of its medical residents in 2001.[1]  On that date, Kevin Montminy, MMC's Acting Director of Audit and Compliance Services, discussed the potential refund claim with Al Swallow, MMC's Associate Vice President of Finance.  Over the following months, Montminy continued to monitor and consider the possibility of filing a refund claim for the 2001 FICA taxes.

---

[1] MMC later filed timely tax refund claims for FICA taxes paid in 2002 and 2003, neither of which is at issue on appeal.

During a March 16, 2005, conference call, Montminy discussed the FICA refund claim with two accountants from Ernst & Young, Maggie O'Brien and Jeanne Schuster. Then, in early April 2005, Montminy faxed a draft copy of the refund claim to Schuster and Joceyln Bishop, another accountant, noting that the refund request was due on April 15, 2005. On April 6 and 7, Montminy and Schuster emailed each other regarding the specific information needed to complete the refund claim. Ernst & Young's invoice later referenced "professional tax services rendered through April 15, 2005," with a specific line-item devoted to researching the 2001 FICA refund claim.

On April 12, 2005, Montminy, Swallow, and two other MMC employees, John Heye, the Vice President of Finance and Treasurer, and Gene Joyner, the Assistant Director of Financial Planning, met to discuss the status of the 2001 FICA refund claim. At the meeting, they decided to file the claim form on April 15. After the meeting, Montminy initiated a series of emails with Jeff Winchenbach, MMC's Director of Financial Services, in order to obtain necessary details for the refund filing; the email exchange continued until after the close of business on April 14.

At 2:30 PM on April 15, 2005, the day the claim was due, Montminy met with Heye to get the final draft of the claim form approved. Heye signed the form, and Montminy took it back to his office to have his assistant, Debbie Raspiller, prepare it for

-3-

certified mailing.   At 3:22 PM, Raspiller faxed the completed signature page back to Heye for his file.

Montminy's standard practice then would have been to drive to the main United States Post Office on Forest Avenue in Portland, Maine, and mail the claim via certified mail, return receipt requested.  Montminy believes this practice was followed; however, neither he nor anyone else at MMC has a specific memory of completing the mailing, and no one at MMC is aware of the identity of the postal service employee who would have dealt with the mailing of the claim.[2]  No one can locate the certified mail receipt or the return receipt.[3]  MMC admits that the claim was not mailed for same-day delivery.  The Internal Revenue Service (IRS) asserts that it has no record of ever receiving the claim.

On December 30, 2009, MMC filed a refund suit against the government in the United States District Court for the District of Maine regarding its 2001, 2002, and 2003 refund claims.  The government conceded that the 2002 and 2003 claims were timely

_____

[2] MMC stated at oral argument that it did not question its employees in order to discover if any of them had personal recollection of mailing the 2001 refund claim until about a month before the complaint was filed in December 2009.

[3]  Though the United States Postal Service offers certified mail customers the option of requesting a duplicate return receipt within two years after mailing, MMC admitted at oral argument that it did not avail itself of this service.

-4-

filed.[4]  However, the government refused to answer interrogatories or provide documents in response to MMC's discovery requests as they pertained to the 2001 claim,[5] arguing that the claim was not timely filed, and that because timely filing is a jurisdictional prerequisite to a refund suit, the court did not have jurisdiction over the claim.  The district court referred the discovery dispute to a magistrate judge.  On February 10, 2011, the magistrate issued an order finding that MMC lacked any basis to compel discovery from the IRS, and that without further discovery, MMC could not prove the jurisdictional prerequisite of timely filing of the 2001

---

[4] At oral argument, MMC admitted that it received some sort of response from the IRS regarding its 2002 and 2003 claims within a year of their filing, but did not hear from the IRS as to the 2001 claim until after the refund suit was filed, over four years later.

[5] MMC, in its interrogatories, requested: (1) information pertaining to the time, date, and location of searches by the IRS for its 2001 return, as well as the identity of persons who searched, a description of the search, and the identification of any documents found as a result of the search; (2) a description of how MMC's tax returns and refund claims since 1996 had been recorded and stored, and if they had been lost or destroyed; (3) the routine steps the IRS took to process FICA refund claims from similar institutions; and (4) the identities of IRS employees or consultants who had studied or analyzed the way that the IRS stores and maintains documents submitted by taxpayers.  MMC also requested various documents, including: (1) copies of its tax returns since 2000; (2) documents pertaining to any search by the IRS for MMC's refunds since 1996; (3) documents pertaining to how MMC's refund claims since 1996 have been stored or indexed; (4) documents describing the IRS's policies for searching for taxpayer documents; (5) documents pertaining to how the IRS stores or loses taxpayer documents, including recommendations as to how to improve these policies; and (6) documents pertaining to IRS efforts to improve record keeping and record retrieval.

claim.[6]  See Me. Med. Ctr. v. United States, 766 F. Supp. 2d 253, 262-63 (D. Me. 2011).  MMC objected to the order, but the district court denied the objections.  On March 22, 2011, the parties filed a joint stipulation pursuant to Federal Rule of Civil Procedure 41(a)(1), voluntarily dismissing the 2002 and 2003 tax refund claims without prejudice and granting MMC the right to reinstate the claims within two years of the date of the stipulation.  Within the joint stipulation, the parties further requested that the district judge enter final judgment as to the 2001 refund, stipulating to the facts and conclusions of law contained in the magistrate's order.  The district judge construed this request as a "Motion for Final Judgment for the Defendant," and entered judgment for the United States as to the 2001 refund claim.  MMC then appealed that judgment to this court.[7]

## II. Discussion

We review legal questions, including those in the tax context, de novo.  Muskat v. United States, 554 F.3d 183, 188 (1st Cir. 2009).  We thus review the district court's interpretation of

---

[6] We refer to this order as the district court decision, though it was initially authored by a magistrate judge.

[7] On March 12, 2012, while retaining jurisdiction, we remanded this case to the district court for its consideration of whether to issue a Rule 54(b) judgment.  See Fed. R. Civ. P. 54(b).  The district court entered such a judgment on March 13, 2012, stating that there was no reason to delay the entry of final judgment, and on March 14, 2012, amended its final judgment for the United States to incorporate the Rule 54(b) judgment.  The case was thus returned to this court for appellate review.

26 U.S.C. § 7502 de novo, while we review its factual findings for clear error. State Police Ass'n of Mass. v. Comm'r, 125 F.3d 1, 5 (1st Cir. 1997).

No suit for a tax refund may be maintained in a United States district court "until a claim for a refund . . . has been duly filed." 26 U.S.C. § 7422(a). Thus, timely filing of a refund claim is a jurisdictional prerequisite to a tax refund suit. Phila. Marine Trade Ass'n v. Comm'r, 523 F.3d 140, 146 (3d Cir. 2008). Sovereign immunity is waived only when claims are filed within the statute of limitations, in this case, three years from the time the return was filed. See 26 U.S.C. § 6511; Sorrentino v. IRS, 383 F.3d 1187, 1188 (10th Cir. 2004) (opinion of Baldock, J.). Here, the parties agree that MMC had until April 15, 2005 to timely file its 2001 refund claim. The burden is thus on MMC, as the taxpayer, to establish that the jurisdictional prerequisite of timely filing was met. Miller v. United States, 784 F.2d 728, 729 (6th Cir. 1986).

Originally, only proof of actual, physical delivery could satisfy a "timely filed" requirement. See Phila. Marine, 523 F.3d at 147 (citing United States v. Lombardo, 241 U.S. 73, 76, 78 (1916)). As the IRS claims that it did not receive MMC's return, this method of proving timely filing is clearly not available to MMC. However, over time, courts developed what came to be known as the common law mailbox rule, "[t]o help courts determine when the

pertinent document was physically delivered," allowing for the presumption that "physical delivery occurred <u>in the ordinary time after mailing</u>."  <u>Id.</u> (emphasis added).  While permitting a fact-finder to presume that "properly mailed documents would actually be received in due course by the addressee, . . . unless same-day delivery was in fact the norm, receipt by the addressee was not deemed to have occurred on the same day as the mailing."  <u>Me. Med. Ctr.</u>, 766 F. Supp. 2d at 258 (quoting <u>Carroll</u> v. <u>Comm'r</u>, 71 F.3d 1228, 1230 (6th Cir. 1995)) (internal quotation mark omitted); <u>accord</u> <u>Phila. Marine</u>, 523 F.3d at 148 (noting that a taxpayer could not rely on the common law mailbox rule to prove timely filing "because it mailed the document before the deadline, but too late for that document to arrive on time in the ordinary course of post office business").  Because MMC alleges that it mailed its return on the afternoon of April 15, 2005, and admits that it did not use same-day delivery, there is no way the refund request could have arrived by the filing deadline (the same day as it was mailed) in the ordinary course of post office business.  Thus, the common law mailbox rule is not available to MMC as a means of proving timely filing of the refund request for purposes of § 7422(a) jurisdiction.[8]

---

[8] There is a split among the circuits as to whether Congress's enactment of 26 U.S.C. § 7502 supplants the common law mailbox rule.  <u>See</u> <u>Sorrentino</u>, 383 F.3d at 1191-93 (opinion of Baldock, J.) (describing circuit split).  Because the common law mailbox rule is unavailable based on the facts of this case, we need not decide on

There is, however, yet another means of proving timely filing: in 1954, Congress created a statutory mailbox rule when it enacted § 7502 of the Internal Revenue Code, which allows "[t]imely mailing [to be] treated as timely filing" when certain requirements are met. 26 U.S.C. § 7502. Congress's purpose, in enacting § 7502, was to "alleviate inequities arising from differences in mail delivery from one part of the country to another." Miller, 784 F.2d at 730 (citing Sylvan v. Comm'r, 65 T.C. 548, 551 (1975)). Section 7502 provides both a general rule under § 7502(a) and a specific rule for registered or certified mail under § 7502(c). Section 7502(c) allows for a registered or certified mail receipt to provide "prima facie evidence of delivery" on the postmark date.[9] 26 U.S.C. § 7502(c). However,

---

which side of the circuit split we fall.

[9] Section 7502(c) provides in full:

(c) Registered and certified mailing; electronic filing.
    (1) Registered mail. For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail
        (A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
        (B) the date of registration shall be deemed the postmark date.
    (2) Certified mail; electronic filing. The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

26 U.S.C. § 7502(c).

because MMC does not possess a certified mail receipt or a return receipt, it is unable to avail themselves of the § 7502(c) rule.[10] Therefore, the only remaining option is the general rule under § 7052(a).

> Section 7502(a) provides in relevant part:
>
> (a) General rule. (1) <u>Date of delivery</u>. If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, <u>delivered by United States mail to the agency</u>, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment

---

Section 7502(c)(2) thus provides a special rule for certified mail only pursuant to regulations handed down by the Secretary of the Treasury. The relevant regulation, 26 C.F.R. § 301.7502-1(c)(2), specifies that § 7502(c)'s rule can apply to certified mail where "the sender's receipt is postmarked by the postal employee to whom the document or payment is presented." Therefore, only a taxpayer who can present a receipt may use the certified mail rule under § 7502(c) for prima facie evidence of timely delivery.

[10] For the first time in its Rule 28(j) letter, the government advanced the argument that there can be no presumption of actual delivery via certified mail where a party never receives its return receipt. See <u>Moya</u> v. <u>United States</u>, 35 F.3d 501, 504 (10th Cir. 1994); <u>Mulder</u> v. <u>Comm'r</u>, 855 F.2d 208, 212 (5th Cir. 1988); <u>McPartlin</u> v. <u>Comm'r</u>, 653 F.2d 1185, 1191 (7th Cir. 1981). MMC, in its response, countered that it did in fact receive the receipt but then misplaced it, and further, that the government's argument was not timely raised. See <u>Ungar</u> v. <u>Arafat</u>, 634 F.3d 46, 50 n.3 (1st Cir. 2011) ("[T]heories not raised squarely in the trial court cannot be raised for the first time on appeal."); <u>Clauson</u> v. <u>Smith</u>, 823 F.2d 660, 666 (1st Cir. 1987) ("In the absence of extraordinary circumstances . . . we have regularly declined to consider points which were not seasonably advanced below."). Regardless of whether the government's theory is waived, it is not necessary to our holding today, so we decline to reach it.

-10-

> is required to be made, <u>the date of the United States postmark</u> stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed <u>shall be deemed to be the date of delivery</u> or the date of payment, as the case may be.

26 U.S.C. § 7502(a)(1) (emphasis added).

Most courts hold that a taxpayer must show eventual actual delivery, even if it is after the expiration of the statute of limitations, if that taxpayer is to take advantage of the benefits of § 7502(a).  See <u>Phila. Marine</u>, 523 F.3d at 148 ("[Section] 7502(a)(1) protects the taxpayer only where the IRS actually receives the document at some later time."); <u>Miller</u>, 784 F.2d at 730 & n.3 (noting that section 7502(a)(1) "applies only in cases where the document is received by the I.R.S. after the statutory period," and citing legislative history stating that the statute applies "in the case where documents . . . are mailed . . . and are received by [the IRS after the statutory period] has expired"); <u>Lee Brick & Tile Co.</u> v. <u>United States</u>, 132 F.R.D. 414, 418 (M.D.N.C. 1990) (noting that § 7502(a) applies only where "a document is actually received by the IRS but belatedly delivered"). This analysis is consistent with the plain language of the statute, which requires that the relevant document be "delivered by the United States mail."  26 U.S.C. § 7502(a)(1); <u>see also</u> <u>Me. Med. Ctr.</u>, 766 F. Supp. 2d at 260 (stating that "the essential requirement" of § 7502(a), according to its plain language, is actual delivery) (quoting <u>Estate of Wood</u> v. <u>Comm'r</u>, 909 F.2d. 1155,

-11-

1162 (8th Cir. 1990) (Lay, C.J., dissenting)).  As the IRS has asserted that it has no record of receiving MMC's 2001 refund claim, MMC must find some way to overcome this difficult hurdle.

MMC argues that it need not show actual delivery because it can prove, via extrinsic evidence, that its refund claim had a timely postmark.  The Eighth and Ninth Circuits have endorsed this method of satisfying § 7502.  See Anderson v. United States, 966 F.2d 487, 491 (9th Cir. 1992) (holding that "direct" extrinsic proof of postmark is permissible for purposes of § 7502 and that § 7502 does not supplant use of common law mailbox presumption); Wood, 909 F.2d at 1161 (same).  There are a number of reasons why this argument does not help MMC.  First, the circuits that do allow the use of extrinsic evidence generally only do so for purposes of invoking an "intra- § 7502 mailbox rule," Phila. Marine, 523 F.3d at 149 (internal quotation marks omitted), which is not available to MMC because its refund request, allegedly mailed on the deadline, would not have arrived by that deadline in the ordinary course of post office business.  Second, extrinsic evidence has only been used to prove a postmark, or at the very least, actual mailing; MMC offers no evidence whatsoever of the mailing itself and thus fails to provide the necessary level of proof.  Third, recent regulations appear to foreclose the possibility of the use of extrinsic evidence for purposes of satisfying the requirements

-12-

of § 7502.  We address each of these problems with MMC's argument in turn.

MMC's first problem arises from the fact that circuits that do allow use of extrinsic evidence in a § 7502 context generally do so to invoke the common law mailbox rule.  There is a circuit split as to whether extrinsic evidence may be used to meet the timely postmark requirement of § 7502, or whether an actual postmark must be produced.  The Second and Sixth Circuits have held that where the taxpayer cannot show an actual postmark and § 7502 is therefore not "literally applicable," it is inappropriate for a court to accept "testimony or other evidence as proof of actual date of mailing."  Deutsch v. Comm'r, 599 F.2d 44, 46 (2d Cir. 1979); accord Miller, 784 F.3d at 730-31.  On the other hand, the Eighth and Ninth Circuits have allowed for extrinsic evidence to give rise to the common law presumption of delivery in a § 7502 context.  See Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir. 1998); Anderson, 966 F.2d at 491; Wood, 909 F.2d at 1161.[11] However, as discussed above, because MMC's claim is that it mailed its refund claim on the date of the deadline, the common law mailbox rule does not apply.  In both Wood and Anderson, there was

---

[11] The Third Circuit has held that the common law mailbox rule is still available when taxpayers need not make use of § 7502's rule excusing late receipt and instead employ the common law mailbox rule independently.  See Phila. Marine, 523 F.3d at 152. At least one judge on the Tenth Circuit has endorsed this view. See Sorrentino, 383 F.3d at 1194 (opinion of Baldock, J.).

-13-

plenty of time for the documents to arrive "in the ordinary course."[12] See Anderson, 966 F.2d at 488 (stating that taxpayer claimed return was mailed on September 15, 1986, where the statutory period expired on April 15, 1988); Wood, 909 F.2d at 1157 & n.3 (noting that the return was due on March 22 and was allegedly mailed and postmarked on March 19). Even if we assume that a taxpayer may employ the common law mailbox rule as a means of showing timely delivery under § 7502, MMC is no closer to proving timely filing.

MMC's second problem is that, even if we were to accept the premise that extrinsic evidence is a viable means of proving a postmark for purposes of § 7502, Wood and similar cases may be distinguished based on the level of extrinsic proof required. At a minimum, the taxpayers in those cases offered testimony regarding actual mailing and some additional corroborating evidence. See Lewis, 144 F.3d at 1223 (taxpayer offered affidavit describing personal memory of actual mailing and also proved that state

---

[12] To the extent Lewis purported to be following Anderson in defining the common law mailbox rule as standing for the proposition that "[p]roper and timely mailing of a document raises the rebuttable presumption that the document has been timely received by the addressee," Lewis, 144 F.3d at 1222 (emphasis added), we find this to be an unpersuasive interpretation of both Anderson and the common law mailbox rule, see id. at 1224-25 (White, J., dissenting) (noting that the common law mailbox rule allows a taxpayer to establish delivery if a document would be "received by the Commissioner prior to the filing deadline if the postal service followed its normal delivery schedule" and that "the mailbox rule does not extend the filing deadline for tax documents") (emphasis added).

return, mailed with the federal return, was received one day after the deadline, whereas the federal return was received eleven days after deadline); Anderson, 966 F.3d at 489, 491 (taxpayer offered testimony describing her observation of the postal clerk affixing the postmark, corroborated by a friend's testimony that she saw the taxpayer go into the post office and exit without the envelope); Wood, 909 F.2d at 1156-57 (taxpayer offered very specific testimony detailing the mailing and observation of the postmark, as well as corroborating testimony from the postal service employee who had a specific memory of the interaction). MMC has not come close to presenting the "extraordinarily rare" circumstances that would satisfy the requirements of the statute without providing an actual postmark, even according to the law of the most permissive circuits. Wood, 909 F.2d at 1161.

Here, no one at MMC can remember filing the return, there is no testimony from a postal service employee, and there is no certified mail receipt or return receipt for the mailing transaction, though MMC admits that its standard practice is to send its refund claims by certified mail, return receipt requested. Further, MMC did not attempt to obtain a duplicate receipt from the postal service. There is absolutely no evidence whatsoever of a postmark or actual mailing; instead, there is merely evidence of preparation of the return. See Me. Med. Ctr., 766 F. Supp. 2d at 262 ("While MMC offers strong evidence that it worked aggressively

-15-

to make a timely claim of refund . . ., it does not offer strong or independently verifiable evidence of the actual mailing of the claim . . . ."). We see no reason why these circumstances would fall within the coverage of § 7502. See Washton v. United States, 13 F.3d 49, 50 (2d Cir. 1993) (finding no need to revisit Second Circuit precedent that § 7502 contains the exclusive exceptions to the physical delivery rule because taxpayers offered no direct evidence of postmark and made no effort to ascertain their claim in a timely manner); see also Davis v. United States, No. 99-5073, 2000 WL 194111, at *3 (Fed. Cir. Feb. 16, 2000) (holding that taxpayer's testimony of mailing by itself was not sufficient to meet the Wood rule).

MMC's third problem is that, since the time of the Eighth and Ninth Circuit decisions, the IRS has issued regulations interpreting § 7502 that would appear to foreclose the use of extrinsic evidence as a means of proving a timely postmark.[13] See 26 C.F.R. § 301.7502-1(e) (2011).[14] The regulations lay out a

---

[13] Because the regulations are unnecessary to our holding, we leave to another day the decision of whether we will give them Chevron deference. See Dickow v. United States, 654 F.3d 144, 149 (1st Cir. 2011) (citing Mayo Found. for Med. Educ. and Research v. United States, 131 S. Ct. 704, 713 (2011)). Nonetheless, we find the regulations to be instructive.

[14] The regulations were proposed on September 21, 2004, when they were first published in the Federal Register. See Timely Mailing Treated as Timely Filing, 69 Fed. Reg. 56,377 (proposed Sept. 21, 2004) (codified at 26 C.F.R. § 301.7502-1). The initial proposed regulations noted that they would be effective for documents mailed after the proposal date. Id. at 56,379. This is

general rule that § 7502 requires actual delivery, 26 C.F.R. § 301.7502-1(e)(1), and that the exclusive exceptions to the rule are "proof of proper use of registered or certified mail, and proof of proper use by a duly designated [private delivery service]," id. § 301.7502-1(e)(2). The regulations further emphasize the exclusivity of the exceptions, stating that "[n]o other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered." Id.

The only proof MMC has offered of proper use of certified mail is Montminy's testimony that his standard practice would have been to send the refund claim via certified mail, return receipt requested. We doubt that this uncorroborated, self-serving testimony is the "proof of proper use of . . . certified mail" to which the regulations refer. Id. The rest of the evidence that MMC offers goes to the proper preparation of the return, but not to its mailing in general or the use of certified mail in particular.

---

also made clear in the final regulations. See 26 C.F.R. § 301.7502-1(g)(4) (2011) (noting that § 301.7502-1(e)(2) applies to "all documents mailed after September 21, 2004."). Though the regulations did not become final until August 23, 2011, see Timely Mailing Treated as Timely Filing, 76 Fed. Reg. 52,561 (Aug. 23, 2011) (final regulations) (codified at 26 C.F.R. § 301.7502-1), the Secretary of the Treasury is expressly authorized by statute to make regulations retroactive to the date of their proposal, see 26 U.S.C. § 7805(b)(1)(B); Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208-09 (1988) (holding that retroactive administrative rulemaking is permissible pursuant to "express statutory grant"). Therefore, the regulations apply to MMC's refund claim, as it was allegedly mailed on April 15, 2005, almost seven months after the regulations were proposed in the Federal Register.

Thus, under the terms of the regulations, MMC fails to show a timely postmark for purposes of § 7502.

On the evidence presented, MMC did not successfully meet its burden of establishing that its 2001 claim was timely filed. The only remaining question is whether MMC has done enough to compel jurisdictional discovery from the IRS.

As a "district court generally retains broad discretion in determining whether to grant jurisdictional discovery . . . the standard for reversing a district court's decision to disallow jurisdictional discovery is high," and the "aggrieved party must show that the lower court's discovery order was plainly wrong and resulted in substantial prejudice."  Blair v. City of Worcester, 522 F.3d 105, 110-11 (1st Cir. 2008) (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001)) (internal quotation marks, citation, and alteration omitted) (emphasis in original).  We will only overturn the district court's ruling upon "a clear showing of manifest injustice."  Swiss Am. Bank, 274 F.3d at 626.

In this case, the district court found that MMC was not entitled to jurisdictional discovery because it had failed to make a prima facie showing of proof of timely filing.  Me. Med. Ctr., 766 F. Supp. 2d at 262 (citing Lee Brick, 132 F.R.D. at 422).  The district court based this finding on MMC's inability either to show the actual delivery required by § 7502(a)(1) or to provide the

-18-

level of evidence necessary under a <u>Wood</u>-type analysis. <u>Id.</u> The district court noted that discovery would help MMC overcome these obstacles only if the IRS actually came across its return and outer envelope. <u>Id.</u> at 262 n.4. This determination was not in any way "plainly wrong" and was not an abuse of the district court's broad discretion. <u>See</u> <u>Blair</u>, 522 F.3d at 110-11.

Further, in analyzing a demand for jurisdictional discovery, we have repeatedly emphasized the importance of a plaintiff's diligence. <u>See</u> <u>Swiss Am. Bank</u>, 274 F.3d at 626 (citing <u>Sunview Condo. Ass'n</u> v. <u>Flexel Int'l, Ltd.</u>, 116 F.3d 962, 964 (1st Cir. 1997)) ("We have . . . held that, in addition to presenting a colorable claim, a plaintiff must be diligent in preserving his rights to be entitled to jurisdiction."). Here, MMC was not diligent in preserving its rights: it did not attempt to obtain a duplicate mail receipt, which would have provided prima facie evidence of timely delivery, and it did not investigate why the IRS had not responded to its 2001 refund claim until just before filing this suit, at which point no one had a personal recollection of mailing the refund claim. Diligence in preserving one's rights also "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." <u>Id.</u> (citing <u>Barrett</u> v. <u>Lombardi</u>, 239 F.3d 23, 26 (1st Cir. 2001)). Unless the IRS came across MMC's refund claim by chance, MMC's arguments do not explain how compelling the IRS to respond to its

discovery requests would go toward proving jurisdiction under § 7502.

While under circumstances like those here presented, the IRS need do nothing more than assert that it has no record of receipt of a tax document in order to dispose of a refund suit, we emphasize that the law encourages parties seeking jurisdictional discovery to exercise more diligence than that shown by MMC. See Swiss Am. Bank, 274 F.3d at 626. "To be sure, the IRS loses tax returns; nevertheless, the taxpayer is in the best position with the clock running to protect himself by procuring independent evidence of postmark and/or mailing, whether by mail receipt, corroborating testimony, or otherwise." Sorrentino, 383 F.3d at 1195 (opinion of Baldock, J.). Where a taxpayer has not been diligent in preserving a claim and has presented no evidence of mailing or postmark, we see no error in denying jurisdictional discovery.

## III. Conclusion

Even assuming an expansive view of the law that is most favorable to MMC, there is no viable route that leads to proper district court jurisdiction over the 2001 refund claim. Therefore, we affirm the district court's judgment in favor of the United States.